IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

PERCY LITTLE, JR.                                                                                    PLAINTIFF
ADC #124075

V.                          Case No. 4:22-CV-00818-BRW-BBM

CAROLYN IVERSON, Nurse, Dub Brassell
Detention Center; and DARRELL ELKIN,
Doctor, Dub Brassell Detention Center                                                    DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommended Disposition. If you do not file objections, Judge Wilson may adopt this Recommended Disposition without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

**I.      INTRODUCTION**

On September 9, 2022, Plaintiff Percy Little, Jr. ("Little") filed a *pro se* Complaint pursuant to 42 U.S.C. § 1983, alleging, in relevant part, that he was denied an inhaler while incarcerated in the W.C. "Dub" Brassell Adult Detention Center ("BADC") in Jefferson

County, Arkansas.[1] (Doc. 2-1). After the Court screened the Complaint, Little was allowed to proceed with his inadequate-medical-care claims against Defendants Nurse Carolyn Iverson ("Nurse Iverson") and Darrell Elkin, PA ("Elkin"). (Docs. 8, 9); *see* (Doc. 28 at 7, ¶ 36) (indicating Elkin is a "PA"). All other defendants and claims were dismissed. (Doc. 9). Little seeks injunctive relief and compensatory damages against Defendants in their individual and official capacities. (Doc. 2-1 at 2, 6).

On August 1, 2024, Defendants filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Indisputable Material Facts, arguing that (1) Little's claims fail on the merits, and (2) Defendants are entitled to qualified immunity. (Docs. 26–28). On September 5, 2024, Little filed a Response to the Motion for Summary Judgment, (Doc. 33), a Statement of Disputed Facts, (Doc. 34), and notice of "Medical Records," (Doc. 35). To date, Defendants have not filed a reply, and the time for doing so has passed. LOCAL RULE 7.2(b). Thus, the issues are properly joined and ready for consideration. For the following reasons, the Court recommends granting Defendants' Motion for Summary Judgment.

---

[1] Little was incarcerated at BADC when he filed the Complaint, (Doc. 2-1 at 1, 7), and is currently incarcerated at the Randall Williams Correctional Facility of the Arkansas Division of Correction ("ADC"). (Docs. 6, 7).

## II.   FACTUAL BACKGROUND[2]

Little has suffered from asthma since he was six or seven years old. (Doc. 28-6 at 18:11–13). His condition requires him to see a doctor every ninety days to review his symptoms and determine the "dosage of the inhaler" he should be prescribed. (Doc. 28-6 at 18:14–19:6). On March 7, 2022, prior to the incidents described in the Complaint, Little was released from ADC custody with a ninety-day inhaler prescription. (Doc. 38-1 at 1). Sometime after his release, Little visited an urgent care clinic in Pine Bluff, Arkansas, and received a new inhaler prescription. (Doc. 28-6 at 19:7–20:17).

On June 21, 2022, Little was arrested for possessing a firearm and taken to BADC. (Doc. 2-1 at 4; Doc. 28-2; Doc. 28-6 at 10:22–11:2). After completing the intake process on June 21, 2022, Little was put in a cell with three to five other inmates, one of whom was "very sick." (Doc. 2-1 at 4; Doc. 28-6 at 14:14–21). Little believed the sick inmate could have Covid, and Little's asthma put him at "high risk" of contracting the virus. (Doc. 2-1 at 4). Accordingly, the next morning, after returning from court, Little refused to go back in the cell with the sick inmate. (Doc. 2-1 at 4; Doc. 28-6 at 15:6–16:6).

While Little was sitting on a bench, refusing to return to his cell and debating the point with non-party Lieutenant Baker ("Baker"), Nurse Iverson entered the room and handed Baker a "large container of Foxx spray." (Doc. 2-1 at 4). Little tried to explain the situation to Nurse Iverson and "asked her about the possibility of getting [] an inhaler." *Id.*

---

[2] The Court sources this factual background from the verified Complaint, (Doc. 2-1); Defendants' Statement of Indisputable Material Facts, (Doc. 28); the Affidavit of Jail Administrator and BADC Records Custodian Jimmy Hudson ("Administrator Hudson"), (Doc. 28-1); Little's booking paperwork, (Doc, 28-2); Little's grievances, (Doc. 28-3); Little's medical requests, (Doc. 28-4); BADC policies, (Doc. 28-5); Little's deposition, (Doc. 28-6); and Little's Statement of Disputed Facts, (Doc. 34).

Nurse Iverson responded by telling Little to "shut the fuck up." *Id*. Little was ultimately placed in another cell. (Doc. 28-6 at 16:9–16).

Little's next interaction with Nurse Iverson did not occur until June 27, 2022. (Doc. 2-1 at 4). On that date, Little asked Nurse Iverson at pill call if he could have an inhaler. *Id.* Nurse Iverson responded, "no." *Id.* Also on June 27, Little submitted a medical request through the jail kiosk. (Doc. 2-1 at 5; Doc. 28-4 at 1). In the subject line, he wrote, "I have asthma. I do not have an inhaler." (Doc. 28-4 at 1). He went on to explain that he had last seen a physician in March 2022 while he was incarcerated in the ADC's Cummins Unit and "was prescribed [an] Xopenex inhaler and albeutrol [sic]." *Id.* It appears that the June 27 request was never read nor responded to by any BADC employee. *Id.*

On June 30, Little put in a second medical request. (Doc. 2-1 at 5; Doc. 28-4 at 2). He stated that he had been at the detention center for almost two weeks and had "asked the nurse for an inhaler." (Doc. 28-4 at 2). He complained that he had asthma and was experiencing breathing problems but had not received any medical attention. *Id.* It appears the June 30 request was also never read nor responded to by any BADC employee. *Id.* However, on June 30, Little also filed a grievance, which received a perfunctory response. (Doc. 2-1 at 5; Doc. 28-3 at 1). Specifically, in the June 30 grievance, Little wrote that he had talked to Nurse Iverson about receiving an inhaler, but she told him there was "nothing she can do." (Doc. 28-3 at 1). A non-party BADC employee, Browley, responded, "You will need to address this to medical." *Id.*

From this record, it is unclear how many times Little spoke to Nurse Iverson about his need for an inhaler between June 27 and June 30, but it is undisputed that at least one

4

interaction occurred. *See* (Doc. 2-1 at 4; Doc. 28-3 at 1; Doc. 28-4 at 2; Doc. 28-6 at 21:5–22:13). During that interaction, Little told Nurse Iverson that he was short of breath, needed an inhaler "right now," and that it was an emergency. (Doc. 28-6 at 21:20–22:4). Nurse Iverson explained that Little had to put in a sick call and slammed the door. *Id.* at 21:20–22:8. On July 1, Little grieved that no one was viewing or responding to his medical requests. (Doc. 28-3 at 2). The grievance went unanswered. *Id.*

It appears that Little did not raise the inhaler issue again until July 8. (Doc. 2-1 at 5). On that date, Little submitted another medical request and grievance. (Doc. 2-1 at 5; Doc. 28-4 at 2; Doc. 28-3 at 3). In the medical request, Little wrote that he had explained to Nurse Iverson and unspecified BADC officers that he needed an inhaler "just in case" he had an attack. *Id.* He went on to state that he had been having "severe breathing problems for the last couple of weeks but ha[d] not rec[ei]ved any medical assistance or attention." *Id.* The medical request did not receive an immediate response. *See id.*

In the July 8 grievance, Little wrote that he needed an emergency inhaler and was having trouble with his breathing. (Doc. 28-3 at 3). He explained that he had submitted medical requests, but they had not been viewed, and he had not received a response. *Id.* Browley again responded by simply writing, "This is a medical issue." *Id.*

Having received no responses to his medical requests and no comprehensive responses to his grievances, Little submitted another medical request and grievance on July 11 and repeated the process again on July 12. In the July 11 medical request, Little wrote that he had put in five medical requests since he arrived at the detention center and still needed an inhaler. (Doc. 28-4 at 4). Obviously frustrated, Little asked, "Whose ass do I

5

have to kiss to get the proper medical attention?!" *Id*. Again, Little did not receive an immediate response to the July 11 medical request. *Id*.

In the July 11 grievance, Little wrote that he had been begging for an inhaler since he arrived at the detention center and repeated, "Whose ass do I have to kiss to get some medical attention?!" (Doc. 28-3 at 4). Browley responded the next day, "You were told that [Nurse Iverson] does not have any inhaler to give away. You may contact your family and ask them to contact your doctor to call in an inhale[r]. They can pick it up and bring it to the jail. (Per[]Nurse Iverson)." *Id.*

Little also filed an "Inmate Request Form" on July 11. (Doc. 28-4 at 5). He titled the request, "Lt. Baker." *Id.* Little asked about calling his attorney but also reiterated that he had not received his inhaler or a response to his medical requests. *Id.* Browley simply responded, "Lt. Baker is not here today." *Id.*

In the July 12 medical request, Little asserted that, despite what Nurse Iverson said, it was not his family's responsibility to bring him an inhaler and that it was, in fact, the detention center's "responsibility to respond to a medical or mental emergency in a timely and proper manner." (Doc. 28-4 at 6). Again, there was no immediate response to the medical request. *Id*.

In the July 12 grievance, Little lamented that he had submitted six medical requests but had not gotten a response or been evaluated. (Doc. 28-3 at 5). Browley responded on July 13, "You may contact your family and have your doctor [] call you in an inhaler (Per[]Nurse Iverson)." *Id*. Little replied with two more grievances.

In the first July 13 grievance, Little questioned why Nurse Iverson was responding to his grievances but not his medical requests. *Id.* at 6. Browley explained, "She is not responding to your grievance[s]; I called her to see if she had spoken with you." *Id.* In the second July 13 grievance, Little stated that he did not have any family members to call a doctor and that he was last prescribed an inhaler at the Cummins Unit. *Id.* at 7. Browley reiterated that Little needed to address the issue with the medical department. *Id.*

The morning of July 15, Little submitted another grievance. (Doc. 38-1 at 2). He continued to complain that no one had viewed or responded to his medical requests and asked who was responsible for handling medical issues. *Id.* Browley quickly responded that Little needed to address his medical issues with medical staff. *Id.*

Shortly after Browley's July 15 response, Nurse Iverson began responding to Little's outstanding medical requests. *See* (Doc. 38-1 at 2; Doc. 28-4 at 1–6). Nurse Iverson responded to Little's July 8 and 12 medical requests and administratively closed his July 11 medical request without response. (Doc. 28-4 at 3, 4, 6). Through her electronic responses, she asked Little what pharmacy he was using to get his inhaler and the last time he picked up his inhaler. *Id.* at 3, 6. She explained, "We need to verify that you have been using an inhaler prior to coming to jail." *Id.* at 3. She also wrote that Little could attend doctor's call for a twenty-dollar fee, unless he was in the custody of the United States Marshal or ADC. *Id.* at 6.

Little responded later that day with another medical request. (Doc. 38-1 at 1). Little wrote that he did not "have any family to get [his pharmacy and inhaler] information" but

7

that he was given a 90-day supply when he was released from the Cummins Unit on March 7, 2022. *Id.* He also claimed that, as of July 14, 2022, he was in ADC custody. *Id.*

Doctor call occurred three days later, on July 18. *See* Doc. 28-4 at 7. On that date, Elkin was "present [and] doing medical request responses" around 5:00 p.m. (Doc. 2-1 at 5). Little was not on the list to be seen by Elkin that day. (Doc. 28-6 at 23:14–24:1). However, a sympathetic officer let Little go speak to Elkin. *Id.* at 24:1–4, 14–17. Little confronted Elkin and asked if Elkin had his medical requests. (Doc. 2-1 at 5). Elkin responded, "no," and they proceeded to have a "heated argument." *Id.*; (Doc. 28-6 at 24:4–9).

Little's deposition testimony regarding his encounters with Elkin is murky. *See* (Doc. 28-6 at 23:21–25:7). Apparently, Little *was* on the list to be seen by Elkin, but at a later date and for a condition that "had nothing to do with…[Little] receiving an inhaler." *Id.* at 23:21–25:7. However, Little was never evaluated by Elkin for his asthma or any other condition. *Id.* at 23:11–13. After the July 18 confrontation, Little had one other brief interaction with Elkin but was not able to discuss the inhaler issue with him. *Id.* at 25:8–26:1; 27:10–20.

On July 19, an inhaler with Little's name on it was delivered to the detention center. (Doc. 2-1 at 5). On July 20, Nurse Iverson conducted pill call but still did not provide the inhaler to Little. *Id.* At the 8:00 a.m. pill call on July 22, Little asked non-party Corporal Anderson if Nurse Iverson had an inhaler for him. *Id.* Corporal Anderson responded that she did not. *Id.* Later that morning, Little asked Chief Gorman if he would check on the inhaler issue, and the Chief agreed. (Doc. 2-1 at 5; Doc. 28-6 at 26:9–22). Within one hour,

8

Chief Gorman returned with Little's inhaler. (Doc. 2-1 at 5: Doc. 28-6 at 26:9–11, 23–25). Chief Gorman explained that the inhaler had arrived on July 19, and he did not know why it had not been provided to Little earlier. (Doc. 2-1 at 5; Doc. 28-6 at 27:1–5).

Little's Complaint alleges that these events "jeopardized my well-being as well as my health permanently." (Doc. 2-1 at 5). Further, in his deposition, Little describes "constantly struggling" to breathe when he did not have an inhaler. (Doc. 28-6 at 40:3–11). After the incidents described in the Complaint, on September 29, 2022, Little moved from the BADC to the custody of the ADC. (Doc. 28-2 at 1).

### III. DISCUSSION

Defendants argue they are entitled to summary judgment on Little's inadequate-medical-care claims. (Docs. 26–28). Specifically, they argue that they are entitled to qualified immunity in their individual capacities because, taking all of the evidence together, Little "cannot show that Defendants deliberately disregarded an objectively serious medical need." (Doc. 27 at 2–13). Defendants further argue that they are not liable in their official capacities because, among other reasons, "[Little] has made no allegations of a pervasive or widespread unconstitutional custom or practice." *Id.* at 14.

Little generally responds that he was denied proper medical treatment despite advising Defendants of his condition. (Doc. 33 at 1). He also provides a handwritten, sworn list of medications he has been prescribed for his asthma over the years and provides a date for each prescription. (Doc. 35).

It is unclear from this record whether either Defendant is entitled to raise the defense of qualified immunity.[3] However, because the Court concludes that no constitutional violation occurred and recommends Defendants' Motion for Summary Judgment be granted on that basis,[4] it not necessary to reach the qualified immunity issue.

### A. Individual-Capacity Inadequate-Medical-Care Claims

Little's inadequate-medical-care claims rest on allegations that, despite *repeatedly* relaying that he had asthma and needed an inhaler, he did not receive an inhaler until July 22, 2022—a full month after he arrived at the detention center on June 21, 2022. (Doc. 2-1 at 4–5). It appears that Little was a pretrial detainee during the events in question. *Id.* at 3.[5] Accordingly, his inadequate-medical-care claim is brought under the Fourteenth

---

[3] The Eighth Circuit has concluded that medical care contractors are not entitled to assert the defense of qualified immunity. *Davis v. Buchanan Cty., Missouri*, 11 F.4th 604, 622 (8th Cir. 2021). Elkin, at the very least, is purported to be a medical care contractor. (Doc. 27 at 14).

[4] Summary judgment is appropriate when the record demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* FED. R. CIV. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). "Courts must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party." *Brand v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 934 F.3d 799, 802 (8th Cir. 2019) (citing *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 216 (2015)).

[5] In his July 15, 2022 medical request, Little stated that he was "in ADC custody," and, thus, was arguably a convicted prisoner during some of the dates in question. (Doc. 38-1 at 1). The distinction makes little difference because, in the Eighth Circuit, the inadequate-medical-care standard is the same for pretrial detainees and convicted prisoners. *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014) ("Although [pretrial detainee's] [inadequate-medical-care] claim is rooted in the Fourteenth Amendment, we apply the deliberate-indifference standard that governs claims brought by convicted inmates under the Eighth Amendment."); *cf. Helphenstine v. Lewis Cnty., Kentucky*, 60 F.4th 305, 315–17 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 692 (2024) (discussing the different circuit approaches and adopting a lower "recklessness" standard for pretrial detainee inadequate-medical-care claims).

Amendment's Due Process Clause, and the Court applies a "deliberate-indifference standard." *Hall v. Ramsey Cnty.*, 801 F.3d 912, 920 (8th Cir. 2015).

To succeed on his deliberate-indifference claim, Little must demonstrate that (1) he had an objectively serious medical need; and (2) Defendants "actually knew of but deliberately disregarded his serious medical need." *Id.*; *Ivey v. Audrain Cnty., Missouri*, 968 F.3d 845, 848 (8th Cir. 2020). Moreover, if the issue is a delay in medical care, Little "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (cleaned up).

"An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a 'layperson would easily recognize the necessity for a doctor's attention.'" *Dalen v. Harpstead*, 123 F.4th 900, 904 (8th Cir. 2024) (quoting *Jones v. Minnesota Dep't of Corr.*, 512 F.3d 478, 481 (8th Cir. 2008)). To begin, the Court assumes, without deciding, that Little's asthma was a serious medical need.[6] Thus, the issues are whether either Defendant "actually knew" of Little's asthma and deliberately disregarded his need for an inhaler, and whether there is any

---

[6] The Eighth Circuit recently indicated that, if an inmate relies on a past diagnosis, "[h]e must show not only that his condition is serious, but also urgent—one that may produce death, degeneration, or extreme pain." *Dalen,* 123 F.4th at 904 (cleaned up). Although Little's alleged breathing difficulties were likely uncomfortable, there is no indication of "death, degeneration, or extreme pain" in the record.

11

affirmative evidence showing a detrimental effect of the one-month delay in Little receiving his inhaler. *Hall*, 801 F.3d at 920; *Laughlin*, 430 F.3d at 929.

### 1. Elkins

For Elkin, the analysis is easy. There is no evidence that Elkin was aware of Little's asthma before their July 18, 2022 confrontation. Little's inhaler arrived at the detention center the next day. (Doc. 2-1 at 5). Although there was a slight delay before Little received the inhaler on July 22, *id.*, there is no evidence that Elkin was involved in that delay in any way. Accordingly, Elkin is entitled to summary judgment in his individual-capacity.

### 2. Nurse Iverson

It is a closer call for Nurse Iverson. According to Little's verified Complaint, he told Nurse Iverson, in person, that he had asthma and needed an inhaler as early as June 22. (Doc. 2-1 at 4). Then, sometime around June 27, Little told Nurse Iverson, again in person, that he was having breathing problems and needed an inhaler "right now." (Doc. 28-6 at 21:20–22:4). He also submitted *many* electronic medical requests and grievances. (Docs. 28-3, 28-4, 38-1).

On the occasions Little relayed his issues in person, Nurse Iverson slammed the door in his face, told Little to "shut the fuck up," and said there was "nothing she can do." (Doc. 2-1 at 4; Doc. 28-6 at 21:20–22:8; Doc. 28-3 at 1). When Browley talked to Nurse Iverson about Little's electronic grievances, as early as July 11, Nurse Iverson simply relayed that she did not have an inhaler to give away and that Little's family should bring him an inhaler or have his doctor call in the prescription. (Doc. 28-3 at 4–5). And, when Nurse Iverson *finally* reviewed and responded to Little's medical requests on July 15, she

told him that he could be seen at sick call for a fee but apparently did not put him on the list or provide Little any more information about how he could get on the sick-call list. (Doc. 28-4 at 3, 6).

Viewing the facts in a light most favorable to Little, Nurse Iverson's response to Little's need for an inhaler was dismissive, lackadaisical, delayed, and sometimes quite rude. Her attitude aside, however, she did what could be expected of any nurse in that situation: she requested verification of Little's serious medical need. In fact, BADC policy required her to verify and approve any prescription before it could be administered. (Doc. 28-5 at 7–8).

Although Little told Nurse Iverson that he had asthma and that he had trouble breathing, there is no evidence in the record that Nurse Iverson *witnessed* Little having any asthmatic symptoms. While she waited for Little to provide the information she needed to verify his prescription, she also provided him an alternative—he could have someone bring him his medication.[7] And, it is undisputed that an inhaler was eventually delivered to the jail for Little on July 19, which he received on July 22.

There is no doubt that Little would have preferred a more diligent response from Nurse Iverson. But she did not completely disregard his medical needs. It is well-established that negligent and even *grossly* negligent conduct does not rise to the level of a constitutional violation. *Fourte v. Faulkner Cnty., Ark.*, 746 F.3d 384, 387 (8th Cir. 2014)

---

[7] It is unclear why Little, who allegedly had an active inhaler prescription at the time of his June 21, 2022 arrest, (Doc. 28-6 at 19:7–20:17), did not have his inhaler with him when he was booked into BADC.

Thus, viewing the facts in a light most favorable to Little, Nurse Iverson's actions simply do not rise to the level of a constitutional violation.

Moreover, although Little contends that "[s]truggling continuously to breathe properly causes permanent []rupture to the lungs," (Doc. 28-4 at 3), and that not using his inhaler frequently can contribute to worsening asthma, he fails to provide any verifying medical evidence to that affect. Accordingly, he cannot prevail on his deliberate-indifference claim based on a delay in receiving his inhaler. *Jackson v. Riebold*, 815 F.3d 1114, 1119–20 (8th Cir. 2016); *Moots v. Lombardi,* 453 F.3d 1020, 1023 (8th Cir. 2006).

The evidence, viewed in the light most favorable to Little, does not establish a deprivation of his constitutional right to receive adequate medical care. Accordingly, Elkin and Nurse Iverson are entitled to summary judgment in their individual capacities.

### B.    Official-Capacity Claims

Because there is no underlying constitutional violation, there is also no basis for official-capacity liability. *Brabbit as Tr. for Bild v. Capra*, 59 F.4th 349, 354 (8th Cir. 2023); *see also Morris v. Cradduck*, 954 F.3d 1055, 1060 (8th Cir. 2020) ("Morris's claims against the defendants in their official capacities, which are treated as claims against the municipality, fail for lack of a constitutional violation."). Thus, Elkin and Nurse Iverson are also entitled to summary judgment in their official capacities.

## IV.   CONCLUSION

When viewing the facts in the light most favorable to Little, no genuine issues of material fact exist, and Defendants are entitled to judgment as a matter of law. Accordingly,

the Court recommends granting Defendants' Motion for Summary Judgment, (Doc. 26), and dismissing Little's claims against Nurse Iverson and Elkin with prejudice.

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' Motion for Summary Judgment, (Doc. 26), be GRANTED

2. Little's claims against Nurse Iverson and Elkin be dismissed with prejudice.

3. Judgment be entered accordingly.

DATED this 4th day of February, 2025.

*Benecia Moore*
_____
UNITED STATES MAGISTRATE JUDGE